In re: Scott Beyor, No. 457-6-09 Rdcv (Teachout, J., Oct. 26, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| SUPERIOR COURT | CIVIL DIVISION |
|---|---|
| RUTLAND UNIT | Docket # 457-6-09 Rdcv |

|  |  |
|---|---|
|  | ) |
| IN RE: SCOTT BEYOR | ) |
|  | ) |

### Petition for Post Conviction Relief
### Findings of Fact, Conclusions of Law, and Order

This matter came before the court for a final evidentiary hearing on October 19, 2010. Petitioner was present and represented by Attorney Paul D. Jarvis. The State of Vermont was represented by Rutland State's Attorney Marc D. Brierre. Petitioner seeks relief from convictions on April 28, 2010 for burglary of an occupied dwelling, assault and robbery with a weapon, and false information to a police officer to implicate another, all on grounds of ineffective assistance of his attorney. He is serving a combined sentence of 10-24 years.

Based on the credible evidence under a standard of preponderance of the evidence, the court finds the following facts and makes the following ruling of law.

### Findings of Fact

Scott Beyor is 36 years old, and has been diagnosed with PTSD, severe depression, and borderline personality disorder. On October 15, 2007, he was drinking at his girlfriend's house, and also took multiple doses of prescription medication. After she kicked him out, he was walking outside. It was sprinkling, and he was cold and hungry. He picked a house at random, rang the bell a few times, got no response, and then entered the house by breaking a window with a log. He made himself an egg and bacon sandwich, and was eating it. The owner, an 80 year old woman, was sleeping upstairs. She heard noises and called for help and barricaded herself into her bedroom, which was already locked. Mr. Beyor grabbed a kitchen knife, went upstairs and down a hall, and broke into her bedroom, brandishing the knife. He shouted to her to give him her purse, which she did. He ran out of the bedroom and left the house. A few hours later he was walking along the road and appeared intoxicated to a police officer who stopped to check on him. He gave a false name. The officer asked him to empty his pockets, advising him that he did not have to do so. He voluntarily complied, and took a woman's change purse and various store cards out of his pocket. The officer noticed an AARP card and a credit card with a name other than the name he had given. The officer contacted dispatch, learned of the home invasion, and arrested Mr. Beyor. Later, upon questioning after having been notified of Miranda warnings, he confessed to entering the home and cooking himself a sandwich. His versions of other parts of the story were different than those later gathered from the victim.

He was arraigned that day. Attorney Matthew Branchaud was assigned to represent him and they met in person at the arraignment. Mr. Beyor was held in jail on $250,000 bail.

Two weeks later, the State noticed the deposition of the victim. Mr. Branchaud himself had intended to depose her, but the State noticed her deposition at an unusually early date, perhaps because of her age. Mr. Branchaud represented Mr. Beyor at the deposition, and over the next several months they had several conferences about the case, nearly all of which were by telephone.

Mr. Branchaud was particularly interested in the circumstances of the police officer's stop of Mr. Beyor by the side of the road, as he thought it might provide grounds for a motion to suppress if there was anything constitutionally improper about the stop. He asked Mr. Beyor about it, and Mr. Beyor described the encounter in the same way the police officer described it in the affidavit accompanying the information. Specifically, Mr. Beyor described that he had voluntarily emptied his pockets in response to the police officer's request, and knew that he was under no compulsion to do so. As a result of examining Mr. Beyor's own account of the stop, Mr. Branchaud concluded that he did not have a good faith basis to take the officer's deposition or file a motion to suppress.

Mr. Branchaud obtained approval for funding to hire Dr. Philip Kinsler to do an evaluation in the hope of pursuing a diminished capacity defense. After the evaluation, he concluded that Dr. Kinsler's opinions did not support a diminished capacity defense. He also concluded that Dr. Kinsler's opinions about Mr. Beyor's mental health history and condition could be used at sentencing for purposes of mitigating the severity of the sentence, and he did call Dr. Kinsler as a witness at the sentencing hearing for that purpose.

The evidence against Mr. Beyor was strong. Mr. Branchaud and Mr. Beyor discussed many times what strategy to take with the case. The State offered a plea agreement with a sentence of 14-25 years. Mr. Branchaud thought that such a sentence would be excessive. The most realistic options were to go to trial, or to plead guilty and have a contested sentencing hearing at which the defense would seek a sentence much lower than the State was recommending.

Mr. Branchaud discussed the pros and cons of these options with Mr. Beyor. Among other factors, he told Mr. Beyor that there was a risk that if they went to trial, the judge would be annoyed at the use of time and expense of public resources on a two day trial where the evidence was so strong.[1] The evidence does not support a finding that Mr. Branchaud used this concept to pressure Mr. Beyor to enter a plea. He also gave him other factors to consider related to the trial process, such as the admissibility of evidence at trial. Mr. Beyor wavered back and forth about whether or not to go to trial. On at least

---

[1] I am not aware of any trial judge who would punitively impose an increased sentence for the reason that a defendant chose to exercise his or her constitutional right to go to trial.

two occasions, he told Mr. Branchaud he wanted to go to trial. There is no evidence that Mr. Branchaud sought to dissuade him from this decision.

In the end, Mr. Beyor decided to plead guilty and seek as short a sentence as he could get at a sentencing hearing before the judge. On April 28, 2010, he pled guilty to all three counts under an agreement that the State would not argue for a maximum sentence greater than 20-35 years. There was a possible maximum on the combined charges of 41 years.

At the change of plea hearing, the judge reviewed the elements of the burglary charge with Mr. Beyor. When the judge asked him if he agreed that the State could prove beyond a reasonable doubt that he entered an occupied dwelling with the intent to commit petit larceny, Mr. Beyor said, "The intent, no, but, yes, I plead guilty." The judge sought to clarify with a few more questions, and Mr. Beyor said, "Yes, I did enter a dwelling. It was not my intent to commit larceny, but I'm aware of the wrongdoing." At that point, Mr. Branchaud asked, "Can I have a moment, Your Honor?" The request was granted, and Mr. Branchaud and Mr. Beyor conferred off the record. After that, the judge asked, "Mr. Beyor, do you agree that the State could prove that?" Mr. Beyor answered, "Yes, Your Honor." The judge accepted the guilty plea on the burglary count, and proceeded with the other two counts.

When the acceptance of the pleas and discussion of time needed for a sentencing hearing was complete, Mr. Branchaud asked the judge, "Your Honor, before we move, can I just have a discussion with Mr. Beyor quick. . .before we fully take this." The request was granted, and there was a pause in the proceedings for a conference between Mr. Branchaud and Mr. Beyor. After that, Mr. Branchaud asked for ten minutes to speak with the State's Attorney on "an issue that I see with the intent on the burglary. . ." The State's Attorney borrowed the court's Title 13, explaining the need to check whether there was a monetary requirement for petit larceny. The possibility of a $50 or more requirement for petit larceny had been mentioned. Mr. Branchaud explained that he "wasn't aware of this issue prior."

The State's theory of the case had been that Mr. Beyor entered the dwelling with the intent to steal the money and other things that he later took. Mr. Beyor, during the plea colloquoy, clarified that he did not have the intent to steal when he entered the home. However, the issue became whether he had the intent to make and eat a sandwich, which he had done, and whether the eating of the sandwich qualified as petit larceny, such that when he entered the dwelling, there was a factual basis for the charge that he intended to commit a petit larceny. It was on this basis that the hearing continued. There is no evidence that Mr. Beyor did not agree with this analysis, or wanted to take back his guilty plea. If there had been a $50 minimum requirement for petit larceny, Mr. Branchaud would have had grounds to object to a burglary charge, thereby reducing sentencing exposure considerably, and it appears that he was pursing this possibility for his client.

On returning to the record, the judge stated, "There's a question on count one as to whether or not he had the intent to commit the petit larceny. I know Mr. Branchaud,

3

his attorney, was reviewing Title 13 in that regard. Mr. Branchaud?" Mr. Branchaud responded that "we've come to an agreement that the, that there was at least the intent to commit a petit larceny when he entered the dwelling; therefore, there is a factual basis for the charge. We, of course, would ask The Court to accept the plea agreement, which it apparently has."

The judge then stated, ". . .just for clarity's sake, I'm going to retake his plea on count one. And, Mr. Beyor, we've gone through the Rule 11 colloquy and you've discussed this matter fully with Mr. Branchaud, is that correct?"

Mr. Beyor: Yes.

The Court: And you had an opportunity at the break to discuss the issue involving some of the requirements of count one, is that correct?

Mr. Beyor: Yes.

The Court: And has Mr. Branchaud answered all your questions?

Mr. Beyor: He has.

The Court: And are you satisfied with his advice in this?

Mr. Beyor: I am.

The Court: And based on that, do you agree that the State could prove beyond a reasonable doubt that you in this territorial unit in the county of Rutland, at Rutland, on or about October 15, 2007, entered an occupied dwelling knowing that you were not licensed or privileged to do so with the intent to commit petit larceny?

Mr. Beyor: Yes, sir.

The Court: And do you understand the maximum here is twenty-five years in prison or a fine of a thousand dollars or both?

Mr. Beyor: I do.

The Court: And do you agree and stipulate that there's a sufficient factual basis for you to be convicted of that, that's beyond a reasonable doubt?

. . .

Mr. Beyor: Yes, Your Honor.

The Court: Okay, as to the charge, what plea would you enter?

4

Mr. Beyor:  Guilty.

The judge reviewed with Mr. Beyor that he had not "had any trouble understanding these proceedings at all" and that he was not under the influence of medications or anything that would hinder his ability to understand, and Mr. Beyor confirmed both points.  The judge asked him again what pleas he entered to all three counts, and Mr. Beyor answered, "Guilty."

At the sentencing hearing on July 2, 2008, the State argued for an overall combined sentence of 20-35 years.  Mr. Branchaud presented evidence and argued for a sentence of  3-10 years.  The Court imposed a sentence of 10-24 years.   Mr. Branchaud was disappointed, and thought it was a harsh sentence, and told Mr. Beyor so.  Mr. Beyor thanked him and said that he (Mr. Branchaud) had done a good job.

At the hearing in this case on Mr. Beyor's petition for post conviction relief, Attorney John B. St. Francis testified as an expert witness on the standard of conduct for an attorney representing a defendant on the facts of this case.  He gave his opinion that it was substandard for Mr. Branchaud not to take depositions and file a motion to suppress to seek to exclude evidence obtained at the police officer's initial stop and search of Mr. Beyor by the side of the road, and that it was substandard not to pursue a diminished capacity defense to the charges.

Mr. St. Francis, in rendering his opinion, did not have all the facts that were presented at the hearing.  He did not know that Mr. Branchaud had specifically explored with Mr. Beyor his own description of the police stop, as part of the process of evaluating grounds for a motion to suppress.  He did not know that Mr. Branchaud concluded, based on Mr. Beyor's own description of the stop, that there was not a good faith basis to pursue a deposition or motion to suppress.  With respect to Mr. St. Francis's opinion that diminished capacity should have been used by Mr. Branchaud as a defense rather than as a sentencing factor, Mr. St. Francis did not give a detailed explanation of the reasons for his opinion.  He acknowledged that Dr. Kinsler is a respected expert regarding mental health issues.  Other credible evidence shows that Dr. Kinsler's evaluation and opinions could reasonably be determined to show insufficient support for a diminished capacity defense to the charges.

Full review of the facts at the hearing shows that Mr. Branchaud did reasonably and responsibly consider the option of depositions and a motion to suppress, and had a reasonable basis to support his decision not to pursue that course.  The opinion testimony that a diminished capacity defense should have been used was not persuasive.

Another issue raised by the evidence in the case is whether Mr. Beyor was coerced by his attorney to enter pleas rather than go to trial.  Expert testimony is not a prerequisite to an argument that a plea was not voluntarily given.  The evidence does not, however, support a finding that Mr. Branchaud pressured Mr. Beyor to plead in order to avoid annoying the judge.  The evidence shows that while Mr. Branchaud discussed many factors with Mr. Beyor about whether or not to go to trial, including the possibility

5

of annoying the judge, the decision was made voluntarily by Mr. Beyor after weighing both options and other factors over the course of several discussions.

Conclusion of Law

Petitioner has not met the burden of proof to show ineffective assistance of counsel on the part of Mr. Branchaud, or that his entry of pleas was based on coercion from Mr. Branchaud.

Order

Judgment is entered for the State. The petition for post conviction relief is *dismissed*.

Dated at Rutland this 26th day of October, 2010.

_____
Hon. Mary Miles Teachout
Superior Judge